# THE AMERICAN AGRICULTURAL CHEMICAL COMPANY

*vs.*

# HAROLD B. SCRIMGER and WILLIAM L. HAWKINS,
### Admr. of Samuel N. Tracy, Deceased, Garnishees of Summerfield S. Tracy.

*Executors and administrators: payments to distributees; notice to creditors unnecessary. Checks: how far a payment; postdated checks.*

There is no duty cast upon administrators or executors to ascertain whether there are any creditors of the distributees, or to notify them of their intention to distribute the estate; and the administrators or executors assume no risk, so far as creditors of distributees or legatees are concerned, in paying out to them their distributive shares before the passing or ratification of the account.                                    p. 393

A check is so far payment, until dishonored, that after its delivery the drawer can not be garnished as debtor of the payee in respect to the debt for which the check is given.        p. 394

A postdated check is a legal and proper instrument, and, like any other check, is payable immediately upon the day of its date.                                    p. 396

An administrator drew his check payable to the order of one of the distributees, dating it as of the following day (on which day the account was to be ratified), and delivered the check to the attorney for the payee in payment for the payee's distributive share when the account should be ratified; after such check had been drawn and delivered, but before the account was passed or the check presented for payment, an attachment was laid in the hands of the administrator by a creditor

of the distributee; there was no charge of any fraud or collusion between the administrator and the distributee, and it was: *Held,* that the attachment did not bind the administrator so as to render him liable to the judgment creditor for the distributee's share for which the check had been drawn and delivered.

p. 396

*Decided March 13th, 1917.*

Appeal from the Superior Court of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was submitted to BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Ridgely P. Melvin,* submitted a brief for the appellant.

*Irving B. Scrimger,* submitted a brief for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appellant in this case sued out of the Circuit Court for Anne Arundel County an attachment upon a judgment recovered by it in said Court against one Summerfield S. Tracy, which was laid in the hands of the appellees as administrators of Samuel M. Tracy, deceased.

The garnishees filed their plea alleging that they had not at the time of the laying of the attachment, nor have they had at any time since, in their hands any goods, chattels or credits of the judgment debtor.

The case came up for trial in the Superior Court of Baltimore City, and was tried by the Court, sitting as a jury.

The following are the undisputed facts of the case. Summerfield S. Tracy, the judgment debtor, was one of the distributees of the estate of Samuel M. Tracy, deceased. There was distributed to him under the first administration account

dated January 21st, 1915, the sum of $515.00. This account though not filed until January 21st, had been previously stated and was in the hands of the administrators on the 20th day of January, 1915. On the last named day the administrators gave to Irving B. Scrimger, a son of Harold B. Scrimger, and attorney for Summerfield S. Tracy, a check dated January 21st, 1915, upon the Fidelity Trust Company of Baltimore, Maryland, for the sum of $1,235.31. This check was in full payment of the amount so distributed to Summerfield S. Tracy and of the amount distributed to one Bessie Stewart, likewise a client of Irving B. Scrimger. Later in the day on January 20th, about six o'clock in the afternoon, the attachment was laid in the hands of the administrators.

Mr. Harold B. Scrimger, one of the administrators, when called by the plaintiff testified that the only object he had in dating the check ahead was to conform to said administration account which was to be filed the next day. He also stated that he knew that Summerfield S. Tracy and Bessie Stewart had an appointment with Irving B. Scrimger, their counsel, on that day to receive their respective distributive shares of the estate, and as he, Harold B. Scrimger, was not expected to be at his office that day he gave to Irving B. Scrimger, for his clients, Tracy and Miss Stewart, the check above referred to, and at the same time gave to him two other checks, one drawn to Wattensheidt, attorney for other distributees, and the other drawn to the Register of Wills for the balance of collateral taxes and court costs, with the request that he deliver said checks to the respective parties to whom they were drawn.

He further stated that on the 20th he was sick and after signing the checks and giving them to Mr. Irving B. Scrimger he left the office and went home. It was there that the attachment was served upon him about six o'clock in the afternoon.

There was, however, a further distribution of a second administration account by which $15.17 was distributed to Summerfield S. Tracy. This amount came into the hands of the administrators after the laying of the attachment and before the case was heard in Court.

At the conclusion of the testimony the plaintiff offered the following prayer: "The plaintiff prays the Court to rule that it appears from the undisputed testimony that the writ of garnishment was served on the garnishees on January 20th, 1915, at 6 o'clock, P. M., and that at that time there were funds of Summerfield S. Tracy, the judgment debtor herein, in the hands of said garnishees, and that, accordingly, the finding of the Court, sitting as Court and jury, is for the plaintiff for the amount of plaintiff's judgment," etc.

The Court rejected this prayer and the plaintiff excepted to its ruling thereon. The Court thereafter rendered a verdict for the plaintiff for the sum of $15.17 upon which a judgment was entered in favor of the plaintiff for said sum. It is from that judgment that this appeal is taken.

The contention is made by the appellant that at the time of service of the writ upon the garnishees the relation of debtor and creditor had not arisen between the administrators and the distributees inasmuch as the administration account had not at that time been passed by the Orphans' Court, and that the alleged payment of the judgment debtor's distributive share of the estate, by means of said check, was prematurely made; and, second, if at that time such relation existed, the debt owing by the administrators to the judgment debtor was not extinguished by the aforesaid check dated January 21st, delivered to the debtor on January 20th.

Section 143 of Article 93 of the Code of 1860 provides that, "Any administrator shall be entitled to appoint a meeting of persons entitled to distributive shares or legacies, or a residue, on some day by the Court approved, and payment or distribution may be there made under the Court's direction and control." This section has since been amended but

only in respect to the requirement as to notice of the meeting to be given to such persons; and by providing that the distribution and payment so made "under the direction and control of the Court shall protect and indemnify the administrator or executor acting in obedience to it."

This Court in *Donaldson* v. *Raborg,* 28 Md. 56, in construing this section as it stood before the amendment said: "Ordinarily it would be safer for an administrator to pursue the course pointed out by this latter section, but there is no express command of the law that he should do so. The duty is cast upon him, in the first instance, to ascertain who the distributees and persons entitled are * * * and if he pays the right parties their proper shares he is protected, whether it is done under the sanction of the Court or not, and it makes no difference whether such payments be made before or after the passing of the account showing the balance for distribution. Such payments, where estates are solvent, are frequently made before such an account is passed, and in some cases the administrator will be compelled to make them. Code, Art. 93, secs. 140, 141." *Biays* v. *Roberts,* 68 Md. 513.

There is no duty cast upon the administrators or executors to ascertain the creditors, if any, of the distributees, or to notify them of his intention to distribute the estate, and he assumes no risk, so far as they are concerned, in paying to the distributees, before the passing of an account, the distributive shares to which they are entitled, therefore if the administrator in this case paid to the distributee the amount to which he was entitled, though paid before the passage of the administration account, no rights of attaching creditor has been infringed upon.

We must now determine whether the check dated January 21st and delivered on January 20th was an extinguishment of the debt. If so, the ruling of the Court upon the plaintiff's prayer was correct and the judgment should be affirmed.

Mr. Morse in his treatise on *Banks and Banking,* paragraph 543 says: "A check is always so far payment until dishonored, that, after its delivery, the drawer can not be garnished as debtor of the payee in respect to the debt for which the check is given," and in support of this principle, he states the case of *Gretchell* v. *Chase,* 124 Mass. 366. In that case the writ was dated March 15, 1877, and served on the same day. Michael Englehardt, summoned as trustee, answered that on March 14, 1877, he owed the defendant $110, and gave him his check for that amount, which the defendant accepted in settlement of the debt; that there were sufficient funds deposited in the bank, on which the check was drawn to his credit, to pay the check on presentation; that the check was presented by the defendant and paid at the bank on March 16, 1877; that when the writ was served upon him, he informed the officer that he had given to the defendant a check for all he owed him, and that the service was too late; and that, at the time of the service upon him, he did not know whether the check had been duly presented to the bank, or in whose possession it was, and made no inquiry in regard to it. CHIEF JUSTICE GRAY, in deciding the case, said: "Upon the facts stated in the trustee's answer, the check was evidently given by him and received by the principal defendant as payment, and operated as such, at least until presentment and refusal, which in this case did not happen. Nothing therefore was due from the trustee to the defendant at the time of the service of this process." *National Park Bank* v. *Levy Bros. & Co.,* 17 R. I. 746; 19 L. R. A. p. 475.

In the case of *Prewitt* v. *Brown,* 101 Mo. App. 254, Prewitt obtained a judgment against Coquard in the Circuit Court of the City of St. Louis, October 16th, 1900, and on November 15th, 1901, an attachment was issued thereon by way of execution, and laid in the hands of Brown. Brown had bought of Coquard his membership in the St. Louis Stock Exchange at and for the sum of $3,500. Brown's

check to pay for Coquard's seat was made out and delivered by him on November 22nd, but was not in fact cashed until November 30th, or five days after the service of garnishment on Brown. The plaintiff insisted that it was incumbent upon Brown to stop payment on the check when he was summoned as garnishee and as he failed to do so and afterwards allowed it to be paid to Coquard, he was answerable to the plaintiff as garnishee.

The Court there said: "Underlying this contention is the motion that the check did not constitute payment; that Brown was still indebted to Coquard on the original contract of sale. It is true enough that as between the parties a check on a bank does not constitute full payment, but the original liability may be sued on if the check is dishonored when presented for payment. *Johnson-Brinkman* v. *Central Bank,* 116 Mo. 558; *Hall* v. *Mo. Pac. R. R. Co.,* 50 Mo. App. 179. But it is equally true that a purchaser in good faith who has given his check to a seller for the price of an article bought, has so far paid for the article that he is not subject to garnishment as the seller's debtor. *Getchell* v. *Chase,* 124 Mass. 366; *National Bank* v. *Levy Bros.,* 19 L. R. A. (R. I.) 475; *Pearce* v. *Davis,* 1 Moody & R. 365; *Waples on Attch. and Garn.* (2nd Ed.), sec. 364; 2 *Morse on Banking* (4th Ed.), sec. 545. The reason of this rule is that the drawer of a check is under no duty or obligation to stop payment when garnished, for the benefit of the garnishing plaintiff; and he has no moral right to do so. He gave the check in lieu of cash to the seller with the understanding that the seller would get cash when he presented it for payment. To countermand the check would, therefore, be in derogation of an implied agreement that it should be honored when presented.

"A different rule prevails when the drawer of the check learns before payment that the vendor sold his property in fraud of his creditors; and in such instances the drawer, after notice of the fact, is bound to stop payment if the check is still in his control. *Arnholt* v. *Hartwig,* 73 Mo.

485; *Dougherty* v. *Cooper,* 77 Mo. 528; *Keet-Rountree Shoe Co.* v. *Lisman,* 149 Mo. 85."

There is no intimation of fraud in this case either on the part of the judgment debtor or the garnishee, or of any collusion between them. The explanation of Mr. Harold B. Scrimger as to the delivery of the check to the counsel for the distributee for the payment of his distributive share of the estate upon the day preceding the passage of the account and the dating of the check on the day succeeding its issuance is perfectly satisfactory and is thoroughly consistent with an honest intention and purpose on his part.

The fact that the check was postdated does not, we think, affect the question here presented. A postdated check is a perfectly legal and proper instrument and like any other check is payable immediately upon the day of its date. It is simply and unquestionably payable on demand so soon as the day of its date is reached. *Morse on Banks and Banking,* sec. 389; *Mohawk Bk.* v. *Broderick,* 10 Wend. (N. Y.) 304.

In this case it was given to the judgment debtor payable upon that day and was received by him in full payment of his distributive share in the estate, and unless dishonored was an extinguishment of the debt. It was not dishonored, and on the day of the passage of the account as shown by the facts stated in the case, the distributee filed his release dated as of that day.

The Court was right in refusing the plaintiff's prayer, and the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*