(637 P.2d 477)
No. 52,726

SCHWERDT, GRACE & NIEMACKL, *Plaintiffs-Appellees,* v. SPEEDWAY FESTIVALS, INC., *Defendant,* and BOARD OF COUNTY COMMISSIONERS OF SHAWNEE COUNTY, KANSAS, *Garnishee-Appellant.*

Opinion filed December 10, 1981.

*Donna Voth,* assistant Shawnee County counselor, of Topeka, for appellant.

*George D. Wagstaff,* of Topeka, for appellees.

Before JUSTICE HOLMES, presiding; MEYER, J.; and HARRY G. MILLER, District Judge Retired, assigned.

MEYER, J.: This case involves garnishment proceedings.

Grace, Niemackl & Schwerdt, garnishors-appellees (garnishors herein), obtained judgment against Speedway Festivals, Inc., for $3,000.00 on August 25, 1976. On June 24, 1980, Shawnee County, garnishee-appellant (garnishee herein), became indebted to Speedway Festivals, Inc., for $40,000.00, by reason of settlement of a lawsuit between Speedway Festivals, Inc. and Shawnee County.

Immediately upon approval of the settlement by the Board of County Commissioners of Shawnee County, a special request was given to the county clerk's office to issue a check in the amount of $40,000.00 to Speedway Festivals, Inc. Said check was delivered to Speedway Festivals, Inc., before noon on June 24, 1980. That same day, the check was presented by the payees for payment at the State Bank of Carbondale. Upon presentment and indorsement by the payees, the check was cashed by the State Bank of Carbondale. The State Bank of Carbondale accepted the check for payment in good faith and without notice of any defenses against or claims to it.

On June 25, 1980, an order of garnishment was requested by the garnishor and said garnishment was received by the clerk of Shawnee County on June 25, 1980, at 9:10 a.m.

The afternoon of June 25, 1980, at the request of another judgment creditor of Speedway Festivals, Inc., the Shawnee County sheriff's office served an order of attachment for said check on the drawee, First National Bank of Topeka. Said funds were attached at the First National Bank from June 25, 1980, to June 27, 1980.

On June 25, 1980, the State Bank of Carbondale sent the check to First National Bank for payment and the check was received by First National Bank the evening of June 25, 1980.

On June 26, 1980, because of the attachment order, First National Bank denied payment of the check and returned it to the State Bank of Carbondale. On June 27, 1980, the State Bank of Carbondale again presented said check to First National Bank of

Topeka and First National Bank of Topeka paid the State Bank of Carbondale for it.

On July 3, 1980, the garnishee filed its answer to the garnishment. The alleged "answer" was a form used in garnishments, but none of the blanks were filled in. The "answer" was signed by Winifred L. Kingman by A.B., but was not verified. In the lower right hand corner, the form contained the words, "No Money."

After a hearing to the trial court, the court ruled that the garnishee filed no document which could be construed as an answer since it did not answer the garnishment as provided by law. The court further ruled that the garnishee had funds in its possession belonging to Speedway Festivals, Inc., at the time of receiving the order of garnishment. The court found that the check did not relieve the garnishee from liability and that the garnishee had a duty to stop payment of the check.

The garnishee brings this appeal.

The garnishee contends the court erred in finding that it failed to answer the garnishment.

K.S.A. 61-2006 sets out the requirements for an answer of a garnishee:

"Within ten (10) days after service upon him or her of an order of garnishment issued for the purpose of attaching any property, funds, credits or indebtedness belonging to or owing the defendant, other than earnings, and within thirty (30) days after service upon him or her of an order of garnishment issued for the purpose of attaching any earnings due and owing the defendant, the garnishee shall file his or her verified answer thereto with the clerk of the court stating the facts with respect to the demands of the order: *Provided,* That where the office or principal place of business of the garnishee is outside the county where said court is situated, said garnishee shall file an answer within thirty (30) days. The answer of the garnishee may be on the appropriate form prescribed in the appendix to this act, but in no event shall the garnishee's answer contain less than that so prescribed in said form."

Further, the statute sets out the procedure in case a garnishee fails to answer in the time and manner specified:

"If the garnishee fails to answer within the time and manner herein specified, the court may grant judgment against garnishee for the amount of the plaintiff's judgment or claim against the defendant, but if the claim of the plaintiff has not been reduced to judgment, the liability of the garnishee shall be limited to the judgment ultimately rendered against the defendant: *Provided, however,* Said judgment may be taken only upon written motion and notice given in accordance with subsection (*d*) of K.S.A. 60-206."

The court in *McCreery v. McCreery,* 210 Kan. 99, 102-3, 499

P.2d 1118 (1972), interpreted the similar statute, K.S.A. 60-718, as follows:

"We can see justification for a judgment in favor of the plaintiff when the garnishee *completely ignores* the garnishment order as occurred in *Buzbee v. Allen County State Bank,* 191 Kan. 112, 379 P.2d 250 [1963]. We can see no justification for employing the harsh results of substituting one debtor for another after a garnishee has submitted himself to the jurisdiction of the court. In this situation, even though a garnishee fails to supply information of a material nature to the interests of the plaintiff, the plaintiff has remedies and the court has jurisdiction to enforce those remedies." (Emphasis added.)

The court further added:

"[A]s long as a garnishee submits himself to the jurisdiction of the court the discovery provisions of the code give ample tools to the plaintiff to protect and enforce all rights intended to be provided to support his interests. Whenever a garnishee makes an appearance in an action no judgment should be entered against him without providing an opportunity to fully answer and present his defenses." 210 Kan. at 104.

In *Jones v. Main,* 196 Kan. 91, 410 P.2d 303 (1966), a garnishee made a note on the garnishee's summons that he had no money due the principal defendant, and filed it with the clerk. It was therein held that this constituted an appearance and the entering of default judgment by the trial court was error. The following are excerpts from *Jones:*

"On August 3, 1964, Perfecto filed with the clerk of the court his copy of the garnishment summons, on the bottom of which the following notation was inscribed:
" 'I received this Summons in Garnishment on the 23 day of July A.D. 1964. As of this day, J. H. Main does not have any money due him from me.'
"The foregoing notation was neither verified nor signed, and it is said in appellees' brief that it was typewritten. However, the entire document, notation and all, was stamped and filed by the clerk and plaintiffs' attorney had knowledge to such effect." 196 Kan. at 92.

Further, the court stated:

"We deem it unnecessary to decide the question of whether the somewhat unorthodox pleading filed by Perfecto, apparently *pro se,* fulfills all the requirements of the answer which the statute directs is to be filed by a party who has been garnisheed. Assuming, for the sake of argument, that the instrument under scrutiny in this case does lack certain statutory essentials, we believe it is nonetheless sufficient to constitute an appearance . . . ." 196 Kan. at 92.

We conclude the meaning of both *Jones* and *McCreery* is that a garnishee-defendant has a right to be heard *on the merits,* whenever the garnishee-defendant appears in the case. In the instant

case, unlike in *Jones,* the garnishee's answer was signed. Further, the statement at the bottom of that answer stated "No Money." Thus, we hold there was an appearance by the garnishee by way of the possibly defective "answer." Moreover, there was actual notice and a hearing.

We can see no way that the garnishors have suffered for the want of a more precise answer or from the fact that the instrument lacked verification by the county.

The mere fact that the answer in the present case failed to contain certain particulars of the statute is not sufficient grounds for judgment against the garnishee. The judgment of the trial court should be affirmed or reversed on the merits of the case.

The garnishee next contends the trial court erred in finding that it had in its control at the time of the service of the garnishment order funds belonging to Speedway Festivals, Inc.

K.S.A. 1980 Supp. 61-2005(*c*) provides in pertinent part:

"An order of garnishment . . . shall have the effect of attaching . . . all such credits and indebtedness becoming due to the defendant between the time of the serving of the order of garnishment and the time of the filing of the answer of the garnishee . . . and such garnishee shall be prohibited from paying over to the defendant any of such property or funds until so ordered by the court from which said order of garnishment was issued."

The issue then is whether the transfer of the check to the payee and the negotiation of said check to a holder in due course prior to the garnishment was sufficient to relieve the garnishee from liability.

"The general rules expressed and supported by well-reasoned cases collated at 38 C.J.S. Garnishment § 96 are that payment by check suspends the judgment debtor's remedy against the garnishee and, as long as the check is not dishonored, defeats a subsequent garnishment; and the garnishee-drawer of the check released from his control has no duty or obligation to stop payment thereon for the benefit of the garnishor." *Pearson Grain Company v. Plains Trucking Co., Inc.,* 494 S.W.2d 639, 641 (Tex. Civ. App. 1973).

Other cases in accord with general rules expressed above include *Russ Togs, Inc. v. Gordon,* 127 Ga. App. 520, 194 S.E.2d 280 (1972); *Hart v. Williams Veneer Co.,* 287 Ill. App. 89, 4 N.E.2d 499 (1936); *Brandfass v. Kohn,* 113 W. Va. 442, 168 S.E. 476 (1933); *Kerr Furniture Co. v. American Ry. Express Co.,* 145 Okla. 278, 292 Pac. 560 (1930); *Amer. Agri. Chem. Co. v. Scrimger,* 130 Md. 389, 100 A. 774 (1917); *Moreau River St. Bk. v. Japinga,* 37 S.D. 404, 158 N.W. 786 (1916); *Larsen v. Allan Line*

*Steamship Co.,* 45 Wash. 406, 88 Pac. 753 (1907). See also 6 Am. Jur. 2d, Attachment and Garnishment § 123, pp. 647-8; and 38 C.J.S., Garnishment § 96, pp. 304-5.

The Kansas court held in *Grant v. Reed,* 165 Kan. 27, 193 P.2d 214 (1948), that a check which was dishonored by the payee bank prior to the garnishment proceeding was not a payment of the debt, and therefore, the garnishee issuing said check was indebted to the defendant at the time of the garnishment. This case is easily reconciled with the general rule since the check only suspends the liability of the garnishee until said check is dishonored. If the check is dishonored, then the liability would generally still be due.

This is consistent with the Uniform Commercial Code's view of the effect of a negotiable instrument on the underlying obligation:

"Unless otherwise agreed . . . the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation. . . ." K.S.A. 84-3-802(1)(b).

In the case at bar, we have an unusual situation where the check was dishonored after it had passed into the hands of a holder in due course, and further, was two days later honored by the drawee bank. The garnishors argue that this temporary dishonor renewed the debt owed between the garnishee and Speedway Festivals, Inc.

Several cases have recognized that where a check is negotiated to a holder in due course before garnishment, since the payee could not have recovered against the drawer, the creditor of payee, having no greater right, could not succeed in his garnishment. *Hiatt v. Edwards,* 52 Ga. App. 152, 182 S.E. 634 (1935); *Farrington v. Fleming Commission Co.,* 94 Neb. 108, 142 N.W. 297 (1913); *National Park Bank v. Levy Brothers,* 17 R.I. 746, 24 A. 777 (1892).

In *Grant v. Reed,* 165 Kan. 27, the Kansas court ruled that a garnishee was still liable on checks orally assigned to a third party. It is noted, however, that said checks were assigned after they were dishonored and known to be dishonored and not transferred for value. Therefore, the third party was not a holder in due course, and had no greater right than the payee to the funds.

Even cases which state that delivery of a draft does not relieve the garnishee if not yet paid, have noted in dicta that when negotiable paper is transferred to a bona fide indorsee for value, there is no garnishable debt to the original payee. *Reade v. Indemnity Ins. Co.,* 121 Conn. 309, 184 A. 646 (1936); *Kossover v. Willimantic Trust Co.,* 122 Conn. 166, 187 A. 907 (1936).

In cases where stop payment orders were in fact entered prior to payment but after the check had been delivered to payee, the garnishee has been held liable. However, both cases noted in dicta that if the check had passed into the hands of a holder in due course, the judgment debtor would have no claim against the garnishee. *Universal Supply Co. v. Hildreth,* 287 Mass. 538, 192 N.E. 23 (1934); *Riegert v. Mauntel,* 44 Ohio App. 470, 185 N.E. 811 (1932). As noted above, there is no duty on the garnishee to stop payment on a check upon receipt of a garnishment order.

Certainly, in the case at bar, Speedway Festivals, Inc., had no right of action against the garnishee since it had cash in hand for the check during the two days that the check had been dishonored.

"[T]he garnishor acquires no greater right by service of the writ of garnishment than the judgment debtor would be able to assert and enforce against the garnishee." *Pearson Grain Company v. Plains Trucking Co., Inc.,* 494 S.W.2d at 641.

The trial court seemed to place a great amount of emphasis on the fact that the check was issued so fast and out of the ordinary course of business. While it appears that the county commissioners knew that the garnishors had a claim against Speedway Festivals, Inc., that is not grounds for making the garnishment good.

"[O]ne owing plaintiff's debtor may pay his debt to such debtor at any time as it is his legal obligation to do, and this he may do even in order to defeat garnishment and even in aid of the debtor in placing the amount of the debt beyond the reach of the latter's creditors." *Pickering, Etc. v. Hartsock,* 221 Mo. App. 868, 877, 287 S.W. 819 (1926).

"[T]here is no rule of law that requires a bank or any one else to withhold funds owing by them to another person, upon the ground that they have knowledge of the fact that some one else has an unsatisfied judgment against such other person." *Provident Nat. Bank of Waco v. Cairo Flour Co.,* 226 S.W. 499, 504 (Tex. Civ. App. 1920).

See also 38 C.J.S., Garnishment § 95, pp. 302-3. We conclude that the fact that the commissioners knew that the garnishors wished

to garnish the proceeds from the lawsuit was not a sufficient reason to make the garnishee liable.

The trial court erroneously concluded as a matter of law that since the garnishee could have stopped payment on the check, that same was still under its control sufficiently to make it now liable to the garnishors herein. In the first place, there is no duty on the garnishee to stop payment on a check when it receives a garnishment order. Further, the check to Speedway Festivals, Inc., had—before the garnishment order was received by the garnishee—passed to the Carbondale bank, which bank was indisputably a holder in due course. To hold that the garnishee was still in possession of the $40,000.00 represented by that check is to ignore the fact that had the garnishee stopped payment on the check, it would have been liable for the full amount thereof to the Carbondale bank. Such is not the kind of possession or control of funds as is contemplated by the garnishment statutes, nor by the cases construing such statutes.

We conclude there was no indebtedness due Speedway Festivals, Inc., from the garnishee at the time of the garnishment. The trial court is therefore reversed.

Reversed.